UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEFFREY J. MILLER,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 3:25-CV-823-CCB

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Jeffrey J. Miller's appeal of the

Social Security Administration's August 23, 2023, decision denying him supplemental

security income based on disability (the "Decision"). The parties have briefed the

appeal. After considering the briefing and the administrative record, the Court finds, for

the following reasons, that the Decision must be affirmed in part and remanded in part.

## ANALYSIS

### A. Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's

final decision in federal court. This Court must affirm the ALJ's decision if it is

supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v.*

*Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere

scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means

"evidence a reasonable person would accept as adequate to support the decision."

*Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. But that review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the Court that he "considered the important evidence" and allow the Court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

2

### B. Procedural Background

Mr. Miller filed an application for disability-based supplemental security income on February 2, 2023. He alleged disability beginning February 25, 2008. That claim was denied initially on August 3, 2023, and upon reconsideration on March 4, 2024. He then filed a written request for hearing. His request was granted, and a hearing was conducted before Administrative Law Judge William Pierson on August 8, 2024. The ALJ issued an unfavorable decision on September 13, 2024. Mr. Miller then appealed that decision to the Appeals Council, which denied his appeal on July 28, 2025. He has now appealed to this Court.

### C. The ALJ's Decision

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. *See* 42 U.S.C. § 423(d)(2)(A). If a claimant's application is denied initially and upon reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

3

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a)*; Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). An answer in the affirmative in steps one through four stops the inquiry and the claimant is found to be not disabled. If steps one through four are answered in the negative, the ALJ proceeds to step five.

Here, at step one, the ALJ found that Mr. Miller had not engaged in substantial gainful activity since February 3, 2023, the application date. (R. 12). At step two, the ALJ determined that Mr. Miller had the following medically determinable severe impairments: obesity, major depressive disorder, generalized anxiety disorder, obsessive compulsive disorder, insomnia, and post-traumatic stress disorder. (*Id.*) He determined that these impairments significantly limited Mr. Miller's ability to perform basic work activities. The ALJ also determined that Mr. Miller had the following impairments: allergic rhinitis, hypertriglyceridemia, diabetes mellitus, and chronic gastroesophageal reflux disease (GERD) without esophagitis. (*Id.*)

At step three, the ALJ found that Mr. Miller did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d),

4

404.1525, and 404.1526)." (R. 13). At step four, the ALJ found that Mr. Miller had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to lifting, carrying, pushing, and pulling 10 pounds frequently and 20 pounds occasionally. The claimant can sit for at least six hours in an eight-hour work day and can stand and/or walk for four hours in an eight-hour work day. The claimant should not climb ropes, ladders, or scaffolds. The claimant can occasionally kneel, crouch, and crawl. The claimant can occasionally bend and stoop. He can occasionally use ramps and stairs. The claimant should avoid working upon wet and slippery surfaces. The claimant can perform the balance required of such activities. The claimant can perform simple tasks, and make the judgments and decisions associated with such tasks. The claimant can respond to routine changes within such a workplace.

(R. 18). He also found that Mr. Miller had no past relevant work. (R. 26).

At step five, the ALJ found that, considering Mr. Miller's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he could perform. (*Id.*) Based on these findings, the ALJ determined that Mr. Miller was not disabled as defined in the Social Security Act. (R. 27).

### D. Issues on Appeal

Mr. Miller requests remand to the Agency on two grounds. First, he argues that the ALJ's determination of RFC was not supported because the ALJ (a) rejected favorable medical evidence and substituted his own opinion, (b) failed to accommodate Mr. Miller's limitations in interacting with coworkers and supervisors, (c) did not address whether Mr. Miller would be off task or present in the workplace at acceptable levels for employment, and (d) did not address the need to change positions. Second, he

argues that the ALJ erred by conducting a subjective symptom analysis that led to a patently wrong conclusion.

### 1. The ALJ's RFC Determination

Mr. Miller first argues that the ALJ's RFC determination was faulty because it did not account for his social limitations. In support, he contends that the ALJ's opinion is at odds with the medical opinions included in the evidence.

In this part of his argument, Mr. Miller focuses on the opinions of three medical professionals: Dr. Russell Coulter-Kern, a psychologist who examined Mr. Miller on behalf of the state agency; and the two state agency reviewing psychologists. First, Dr. Coulter-Kern opined that Mr. Miller has moderate to severe difficulty responding appropriately to supervision and coworkers in a work setting. (R. 485). Second, the two reviewing psychologists opined that Mr. Miller is moderately limited overall in his ability to interact with others and in his ability to concentrate, persist, or maintain pace, but that he can respond appropriately to brief supervision and interactions with coworkers and work situations. (R. 81, 86, 92, 97).

The ALJ determined that Dr. Coulter-Kern's opinion was unpersuasive because it was unsupported by the doctor's own findings. He found the reviewing psychologists' opinion to be generally persuasive, but he took issue with their failure to define what they meant by "brief supervision and interactions." Ultimately, the ALJ determined that Mr. Miller was not limited at all in his ability to understand, remember, and apply information and was only mildly limited in his ability to interact with others, and only

moderately limited in his ability to concentrate, persist, and maintain a pace, as well as in his ability to adapt and manage himself. (R. 13–14).

Mr. Miller contends that this mismatch between the ALJ's conclusions and the medical opinions resulted in a flawed RFC. First, he argues that the ALJ failed to either follow up with the reviewing psychologists to determine what they meant by "brief supervision or interactions" or determine Mr. Miller's limitations in this regard from other record evidence. Second, he argues that the ALJ failed to sufficiently consider Dr. Coulter-Kern's opinion.

An ALJ "in a social security hearing has a basic obligation to develop a full and fair record." *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). To that end, if a consultative examiner's report is "inadequate or incomplete," the ALJ must "contact the medical source who performed the consultative examination" and "ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b). In cases where an examiner does "not provide any specific limitations or explain the rationale for his conclusions," the ALJ has a "regulatory duty" to "follow[] up with the doctor." *Cieszynski v. Kijakazi*, No. 22-2024, 2023 WL 2523499, at *5 (7th Cir. Mar. 15, 2023) (unpublished decision).[1] When the ALJ does not follow up, the record is not full and fair, and good cause exists "to remand for gathering of additional evidence." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). But "[m]ere conjecture or

---

[1] This decision is an unpublished order and thus does not bind this Court, *see* 7th Circuit Rule 32.1(b), but the Court may take it as persuasive authority.

speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1993).

This means that if the ALJ found the record to be incomplete due to the reviewing psychologists' failure to define the phrase "brief supervision and interactions," he had a regulatory duty to follow up with the psychologists. If, on the other hand, sufficient evidence existed in the record to justify the ALJ's decision without clarification on this issue, he had no duty to recontact the psychologists. Here, the ALJ does not conclude that the record is incomplete. He concludes that the undefined phrase is "not useful" in determining Mr. Miller's RFC, and discounts it for that reason. (R. 25). So the formal regulatory duty to clarify is not triggered unless the absence of this evidence from the record creates an evidentiary deficit on this subject.

Mr. Miller contends that it does. Without the reviewing psychologists' evidence on Mr. Miller's ability to interact with others, Mr. Miller contends that the ALJ had insufficient evidence to reach a conclusion on the severity of this aspect of Mr. Miller's social limitations. The ALJ's opinion on this subject focuses on record evidence suggesting that Mr. Miller gets along well with authority figures, plays cooperative games online, is cooperative, makes appropriate eye contact, and displays appropriate behavior. (R. 14). Mr. Miller contends that this is not enough because, among other things, it does not support a conclusion on Mr. Miller's "ability to interact with others on a sustained basis in a work setting, as opposed to isolated or controlled interactions." (ECF 17 at 7).

8

In response, the Commissioner argues that the ALJ had sufficient evidence to determine Mr. Miller's social limitations, so there was no need to recontact the reviewing psychologists. The remaining record evidence relied on by the ALJ, he contends, is sufficient to support the ALJ's conclusion that Mr. Miller was "mild[ly]" limited in his ability to interact with others. (R. 14).

At the core of the parties' dispute is the question of duration. Both parties accept that Mr. Miller is somewhat limited in his ability to interact with others. But Mr. Miller maintains that, absent the limitation to "brief supervision and interactions," the record offers no specific insight into how *long* Mr. Miller can sustain interaction with others. So the question before the Court is whether an absence of evidence on the durational limits of Mr. Miller's social interaction is sufficient to warrant remand on this issue.

It is not. To avoid remand, the ALJ's opinion "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Here, he has done so. The record shows that Mr. Miller is generally able to engage appropriately with others, with some exceptions. (R. 14). This evidence is sufficient to "build an accurate and logical bridge" to the conclusion that he is mildly limited in social interactions. Thus, the absence of evidence indicating how long Mr. Miller can sustain social interactions does not create an evidentiary deficit.

Nor does the ALJ's rejection of Dr. Coulter-Kern's opinion. The ALJ articulated that Dr. Coulter-Kern's opinion was unpersuasive because it was contradicted by other record evidence, including Mr. Miller's statements to healthcare providers, treatment notes, and clinical findings. He specifically identifies Dr. Coulter-Kern's own findings

9

that Mr. Miller had "intact recent and remote memory, good insight and judgment, ability to perform simple calculations without error, and [was willing] to cooperate with the examination process" as at odds with Dr. Coulter-Kern's determination of moderate to severe limitation "without description of specific limitations of function." (R. 25). This neither improperly rejects Dr. Coulter-Kern's opinion out of hand nor creates an evidentiary deficit in the record.

Thus, remand is not justified based on the ALJ's rejection of medical evidence favorable to Mr. Miller. Nor is it justified based on the ALJ's failure to specifically address the durational limits of Mr. Miller's ability to interact socially.

Mr. Miller next argues that the ALJ did not address whether Mr. Miller would be off task or present in the workplace at acceptable levels for employment. He accepts that the ALJ made some findings of mental limitation but contends the ALJ failed to address whether Mr. Miller would be able to show up for work or stay on task to the degree expected by employers.

Mr. Miller acknowledges that no medical expert quantified his likely rate of off-task behavior or absenteeism. (ECF 17 at 9). But he maintains that these risks are apparent from the evidence. Citing *Lothridge v. Saul*, he argues that because off-task behavior and absenteeism are issues raised by the record evidence, the ALJ must address whether Mr. Miller can meet the benchmark for off-task behavior. (ECF 10 at 15 (citing 984 F.3d 1227, 1234–35 (7th Cir. 2021))).

The Commissioner responds that the burden rests on Mr. Miller to establish his functional limitations, and he has not identified evidence in the record that would give

10

rise to a concern of off-task behavior or absenteeism. In support, he argues that without medical evidence that Mr. Miller would be absent or off task for a problematic amount of time, the ALJ did not need to address this issue. (ECF 16 at 10 (citing *Louis v. Kijakazi*, No. 1:22 C 33, 2022 WL 15738960, at *6 (N.D. Ind. Oct. 28, 2022) ("[N]o medical source specifically opined that [the p]laintiff . . . required time off task. Thus there is no error in the ALJ's articulation as to these limitations."))). But, as Mr. Miller points out, the ALJ's comments during the hearing suggest he believed off-task behavior or absenteeism were real risks. In his examination of the vocational expert, the ALJ noted that "the crux of the argument is, really, inability to be there, as [Mr. Miller] mentioned, consistently; to be there, show up on a day-to-day basis." (R. 74). This is supported by the evidence of the state agency psychologists, who opined that Mr. Miller would be moderately limited in his ability to complete a normal workday or perform work at a consistent pace. (R. 85, 97). Yet the ALJ's RFC determination contained no explanation of how evidence of off-task behavior or absenteeism affected Mr. Miller's limitations.

ALJs "need not use any 'magic words' in formulating a person's [RFC]." *Lothridge*, 984 F.3d at 1233. But the RFC analysis must "say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Id.* (citing *Crump v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019)). Here, the medical evidence raised questions about Mr. Miller's ability to show up or stay on task during a normal workday. (R. 85, 87). The ALJ found this evidence persuasive (excepting the undefined phrase discussed above). Mr. Miller himself reported that he can only pay attention for 45 to 60 minutes at a time. (R. 14). And the ALJ acknowledged in his colloquy with the vocational expert

that Mr. Miller's ability "to be there" at a job played a significant role in the ALJ's RFC determination. As in *Lothridge*, the vocational expert here testified that employers generally tolerate no more than 10 percent off task behavior and generally accept only minimal tardiness. 984 F.3d at 1234; (R. 74). And like in *Lothridge*, the ALJ limited Mr. Miller to "simple tasks" and "judgments and decisions associated with such tasks" without addressing how those limitations account for the risk of Mr. Miller's absenteeism or off-task behavior. 984 F.3d at 1234; (R. 14). Because record evidence supports the risk of absenteeism or off-task behavior, and the ALJ recognized this risk but failed to address how it would affect Mr. Miller's ability to work, remand is required on this issue.

Finally, Mr. Miller argues that the ALJ failed to properly incorporate Mr. Miller's need to change positions into his RFC determination. In support, he contends that the ALJ rejected a medical opinion regarding Mr. Miller's need to change position as unpersuasive but failed to make any determination from record evidence as to how long Mr. Miller could maintain certain postures.

In his RFC determination, the ALJ found that Mr. Miller "can sit for at least six hours in an eight-hour work day and can stand and/or walk for four hours in an eight-hour work day." (R. 18). Though Stephanie Shire, NP, opined that Mr. Miller could sit for no more than 100 minutes, stand for no more than 30 minutes, and walk for no more than 30 minutes, the ALJ found her opinion unpersuasive. (R. 24). Among other reasons, he noted that the opinion was inconsistent with Nurse Practitioner Shire's findings that Mr. Miller had normal strength, sensation, and reflexes. (*Id.*) He also

12

considered and found persuasive the opinion of the state agency practitioners that Nurse Practitioner Shire overestimated Mr. Miller's limitations. (*Id.*) These practitioners opined that Mr. Miller "can stand and/or walk for four hours in an eight-hour workday" and found no limitation on his ability to sit. (R. 24).

Mr. Miller argues that the ALJ failed to acknowledge Nurse Practitioner Shire's findings that Mr. Miller had calluses on the balls of his feet and that he was morbidly obese, both of which affect his mobility. But the ALJ did address both issues in his assessment of the RFC. (R. 19–20). And the ALJ did not need to address every piece of evidence so long as his reasoning could be traced logically from the evidence to his conclusion. *See Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."). The ALJ explained sufficiently why he favored the state agency practitioners' opinions on Mr. Miller's postural limitations over Nurse Practitioner Shire's. That opinion was embodied in his RFC determination. Thus, remand is not appropriate on this issue.

### 2. The ALJ's Symptom Evaluation

Mr. Miller also argues that the ALJ's evaluation of Mr. Miller's subjective symptom report was patently wrong. In support, he contends that the ALJ improperly determined that Mr. Miller's testimony was inconsistent with record evidence. He takes particular issue with the ALJ's reliance on Mr. Miller's testimony that he was searching for a job and that he consistently played video games with others online, objecting that the ALJ improperly credited these reports while discrediting Mr. Miller's allegations of

13

his physical and mental limitations. And he repeats his earlier argument that the ALJ

failed to account for how Mr. Miller's reported symptoms undermine the RFC's

determinations regarding Mr. Miller's ability to sustain work over the course of a

workday.

Once an ALJ finds that a claimant has a medically determinable impairment that

"could reasonably be expected to produce" the claimant's symptoms, the ALJ "must

then evaluate the intensity and persistence" of the claimant's symptoms so that the ALJ

can determine how the claimant's symptoms limit her "capacity for work." 20 C.F.R.

§ 404.1529(c)(1). If the claimant's symptoms are consistent with "objective medical

evidence and the other evidence of record," the ALJ will be more likely to determine

that the symptoms reduce the claimant's RFC. S.S.R. 16-3P, 2017 WL 5180304, at *8. But

if a claimant's "statements about the intensity, persistence, and limiting effects of

symptoms are inconsistent with the objective medical evidence and other evidence," the

ALJ will be less likely to determine that the symptoms reduce the claimant's RFC. *Id.*

Upon appeal, this Court will uphold the ALJ's subjective symptoms evaluation "unless

that determination is patently wrong." *Wilder*, 22 F.4th at 653 (citation omitted).[2]

To be "patently wrong," the ALJ's decision must "lack[] any explanation or

support." *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008) (citation omitted). This Court

---

[2] In *Wilder*, the Seventh Circuit uses the phrase "credibility determination" to refer to the subjective symptoms evaluation. 22 F.4th at 653. This is because the ALJ's assessment of a claimant's subjective symptoms was formerly referred to in the regulations as a credibility determination. *See* S.S.R. 16-3P at *2. Social Security regulations now use the phrase "subjective symptom evaluation" and emphasize that the inquiry does not examine the claimant's character but how closely their subjective symptoms track the other record evidence. *Id.*

will not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Id.* Remand on this ground is appropriate only if Mr. Miller can show that the ALJ could not offer even one valid reason for his conclusion in the subjective symptoms evaluation. *See Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) (Reviewing courts will "not reverse [a] credibility determination as long as the ALJ provide[s] at least one reason to support the finding.") (citing *McKinzey v. Astrue*, 641 F.3d 884, 890–91 (7th Cir. 2011) (finding that the ALJ only provided one valid reason for her credibility determination, but that single reason was sufficient to justify her decision)).

Here, Mr. Miller has failed to show that the ALJ's conclusion "lacks any explanation or support." *Elder*, 529 F.3d at 414 (citation omitted). Mr. Miller effectively asks the Court to reweigh the evidence, listing out elements of Mr. Miller's testimony and comparing them to other record evidence to illustrate that the ALJ's conclusions were incorrect. But the Court will not rework the ALJ's credibility analysis unless presented with evidence that the ALJ was patently wrong. Mr. Miller has failed to make that showing. Though he goes on to persuasively argue that the ALJ failed to determine the effect of Mr. Miller's limitations on his ability to sustain work throughout the day, this separate issue was already raised and decided above. Thus, as Mr. Miller cannot show that the ALJ's analysis of Mr. Miller's subjective symptoms was patently wrong, remand is inappropriate on this issue.

15

## CONCLUSION

For the reasons above, the Commissioner's Decision is **AFFIRMED IN PART**

and **REVERSED** and **REMANDED IN PART** for further consideration as set forth in

this order.

SO ORDERED on July 1, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

16